IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 2:25-cr-216-MHT-JTA |
| | ) (WO) |
| SAMUEL CORNELIUS GREEN and | ) |
| SHARON JONES GREEN | ) |

### ORDER

Before the court are the Notices of Appearance filed by Attorneys Joseph Cleodus Espy, III, William Martin Espy, and Benjamin Joseph Espy ("the Espys") on behalf of Defendants Samuel and Sharon Green ("the Greens"). (Docs. No. 56, 57, 58.) For the reasons stated below, pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure, the Espys are due to be disqualified from representing the Greens.

### I. STANDARD OF REVIEW

The Sixth Amendment right to choose one's own counsel imposes "a presumption in favor of [a criminal defendant]'s counsel of choice." *Wheat v. United States*, 486 U.S. 153, 164, (1988). Despite this presumption, the right to choice of counsel "is not absolute." *United States v. Schneider*, 853 F. App'x 463, 464 (11th Cir. 2021) (citing *United States v. Ross*, 33 F.3d 1507, 1522-23 (11th Cir. 1994), *overruled on other grounds in Crawford v. Washington*, 541 U.S. 36 (2004))). A defendant's right to be represented by counsel of choice "'is qualified by the judiciary's "independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards."'" *United States v. Pacheco-Romero*, 374 F. Supp. 3d 1326, 1329 (N.D. Ga. 2019) (quoting

*United States v. Henry*, 307 F. App'x 331, 334 (11th Cir. 2009) (quoting in turn *Ross*, 33 F.3d at 1523), *objections overruled*, No. 1:19-cr-77-LMM-RGV, 2019 WL 1724048 (N.D. Ga. Apr. 18, 2019), *aff'd sub nom. United States v. Lopez*, 829 F. App'x 949 (11th Cir. 2020). Even in the face of a knowing and voluntary waiver, the presumption in favor of petitioner's choice of counsel "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164.[1]

---

[1] A district court's discretion to disqualify conflicted counsel, even if all affected clients waive the conflict, exists

> because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S.Ct. 1692. Therefore, district courts have "substantial latitude" to refuse a client's waiver "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163, 108 S.Ct. 1692.

*Schneider*, 853 F. App'x at 465.

*Wheat* explained the reason for affording a district court substantial discretionary latitude when considering whether to reject a waiver of counsel:

> [A] district court must pass on . . . whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from

2

Joint representation[2] of codefendants in a criminal case necessarily presents an apparent, yet waivable,[3] actual or potential conflict of interest. *See* Fed. R. Crim. P. 44 advisory committee's note to 1979 amendment. Therefore, "Rule 44(c)(2) of the Federal Rules of Criminal Procedure requires the Court to 'promptly inquire about the propriety of joint representation,' and to 'personally advise each defendant of the right to effective assistance of counsel, including separate representation.'" *Pacheco-Romero*, 374 F. Supp. 3d at 1328 (quoting Fed. R. Crim. P. 44(c)(2)). "Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2).

## II.   FACTS AND PROCEDURAL HISTORY

On March 12, 2025, the Greens, along with codefendant Schemillia Levera Fenn, were charged in a twenty-count indictment involving an alleged conspiracy to defraud the

---

> his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

*Wheat*, 486 U.S. at 162–63.

[2] "Joint representation occurs when: (A) two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and (B) the defendants are represented by the same counsel, or counsel who are associated in law practice." Fed. R. Crim. P. 44(c)(1).

[3] In the event of a waiver of the conflict, the court must hold a hearing to "scrupulously evaluate the insistence of the defendants on the right to privately retained counsel of their choice" and "carefully evaluate" the defendant's conflict waiver to ensure "the waiver is voluntary, knowing and intelligent." *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984); *see Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981). At the Rule 44(c) hearing, the court scrupulously inquired into the nature of the conflict waiver to determine if the Greens entered it knowingly and voluntarily.

United States of federal funds made available to assist households unable to pay rent under the Emergency Rental Assistance Program ("ERAP"). (Doc. No. 1 at 1.) The Greens allegedly used various individuals' personal information without their consent, along with false addresses, to fraudulently obtain ERAP funds. (Doc. No. 1.) Jointly, the Greens face charges of one count of money laundering conspiracy in violation of 18 U.S.C. 1956(a)(1)(B)(i) and one count of wire fraud conspiracy in violation of 18 U.S.C. § 1343.[4] (*Id*. at 3, 5.) Separately, Samuel Green faces three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), six counts of wire fraud in violation of 18 U.S.C. § 1353, and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*Id*. at 3–4, 6–7, 8-9.) Sharon Green separately faces three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), four counts of wire fraud in violation of 18 U.S.C. § 1353, and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*Id*. at 4–11.)

At their initial appearance, the Greens sought and were appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"). The court appointed CJA Panel Attorney Timothy Charles Halstrom to represent Samuel Green and CJA Panel Attorney Ashley Nye Smith to represent Sharon Green. (*See* Docket Sheet.) Both Attorney Halstrom and Attorney Smith have remained as counsel of record without interruption since their appointment at the Greens' initial appearance. Both have attended all court proceedings, including two Rule 44(c) hearings. Both have a substantial history of capably representing

---

[4] Fenn is jointly charged in this count of wire fraud conspiracy. (Doc. No. 1 at 5-6.) It is the only count she faces.

4

defendants in criminal cases in this District and are capable of adequately representing the Greens in this action.

The first Rule 44(c) hearing occurred on March 28, 2025, after Attorneys Amardo Wesley Pitters and Preston Larry Presley filed notices of appearance for Samuel and Sharon Green, respectively.[5] Pitters and Presley withdrew from the case before the court ruled as to their joint representation of the Greens. (Docs. No. 49–51.) Attorneys Halstrom and Nye filed motions to withdraw after Attorneys Pitters and Presley appeared, but those motions were denied as moot after Attorneys Pitters and Presley withdrew. (Doc. No. 51.)

Twenty-one days later, the Espys filed notices of appearance as retained counsel. (Docs. No. 56–58.) Each Espy filed a notice of appearance for both Greens.[6] (*Id.*) Therefore, pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure, the court set a second Rule 44(c) hearing for May 6, 2025. (Doc. No. 61.) The Greens and all their attorneys of record appeared at the hearing. At the hearing, the Greens entered into evidence a single, jointly signed acknowledgement and waiver of conflict. (Def. Ex. 1, SEALED.) As in the first Rule 44(c) hearing, the court separately advised each of the Greens of the right to effective assistance of counsel, including the right to separate counsel and the conflicts inherent in joint representation. (Doc. No. 65, Tr.) The court also separately inquired into the Greens' competence, knowledge, and willingness to enter into

---

[5] Pitters and Presley practice at the same law firm, known as the Pitters and Presley Law Firm.

[6] In light of the Espys appearance in the case, Attorneys Halstrom and Nye again filed motions to withdraw. (Docs. No. 54, 59, 64.) Those motions will be addressed in separate orders.

the conflict waiver. (*Id.*) Additionally, the court inquired of the Espys regarding the likelihood a conflict may yet arise from joint representation. (*Id.*)

The matter is ready for resolution.

### III. DISCUSSION

At the second Rule 44(c) hearing, the Espys argued no conflict of interest or violation of the Alabama Rules of Professional Conduct currently exists "as of today" regarding their joint representation of both Greens. (Doc. No. 65, Tr. at 20–21.) They also argued the Greens competently, knowingly, and voluntarily waived their right to separate counsel.

For purposes of this Order, the court assumes, without deciding, the Greens competently, knowingly, intelligently, and voluntarily waived their right to separate counsel. The court further assumes, without deciding, the Espys correctly assessed that no ethical violation[7] or constitutionally significant conflict of interest exists "as of today." (*Id.*) But that is not the end of the court's inquiry. The court must also (1) determine whether there is good cause to believe no conflict is likely to arise *after* "today," and, (2) absent a finding of good cause, take appropriate measures to protect the Greens' right to counsel. Fed. R. Crim. P. 44(c)(2); *see also Pacheco-Romero*, 2019 WL 1724048, at *1 ("[T]he question is whether the conflict is 'likely' or whether there is a 'serious potential'

---

[7] *See* Ala. Rules of Prof'l Conduct r. 1.7(b) (concerning conflicts of interest involving joint representation); *see also* M.D. Ala. LR 83.1(g) ("Attorneys admitted to practice before this Court shall adhere to this Court's Local Rules, the Alabama Rules of Professional Conduct, the Alabama Standards for Imposing Lawyer Discipline, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct.").

for conflict, not whether the conflict is actual or provable at the time of disqualification." (citing Fed. R. Crim. P. 44(c)(2); *Wheat*, 486 U.S. at 164)). The court will also take into consideration the need to "ensure adequacy of representation, to protect [the] integrity of [the] court, and to preserve [the] trial judge's interest" in freedom "from future attacks over [the] adequacy of [the] waiver and [the] fairness of [the] trial." *Ross*, 33 F.3d at 1524 (citing *Wheat*, 486 U.S. at 162).

A.   Likelihood of Development of a Conflict

Joint representation of codefendants in criminal cases ordinarily gives rise to conflicts of interest.[8] The likelihood of conflicts arising is especially high where, as here, joint representation involves codefendants with differing levels of potential culpability,[9] who are accused of conspiring together, and who "were each in a position to observe the

---

[8] *See* Ala. Rules of Prof'l Conduct r. 1.7 cmt. (cautioning that "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant," while recognizing "common representation of persons having similar interests is proper if the risk of adverse effect is *minimal*" and the conflict has been properly waived (emphasis added)).

[9] At the hearing, counsel for the Government acknowledged "discovery is voluminous, but the discovery is the exact same for both defendants." (Doc. No. 65, Tr. at 5.) When the court inquired whether there was "any indication one defendant played more of a role in the criminal charges than the other, or [one was] more culpable based on their conduct than the other," the Government responded:

> Based on the charges themselves, Mr. Green has been – is facing more charges specifically with – in respect to I believe money laundering or – excuse me – aggravated identity theft and wire fraud. And in the entire case, if we include relevant conduct that will be considered later on during this case, Mr. Green also has more of a role in that aspect. So he has more charges. And in the entire conspiracy, it is the government's position that Mr. Green is more culpable in this case.

(*Id.*) The indictment and record are fully consistent with the Government's representations. (Doc. No. 1.)

7

other's criminal conduct." *United States v. Garner*, No. 12-cr-65-JMH, 2013 WL 99396, at *2 (E.D. Ky. Jan. 7, 2013). In such situations, numerous potential conflicts lurk at every stage of the case, including negotiation of plea and cooperation agreements, decisions to file motions to suppress, trial strategy, and examination of witnesses. Joint representation poses a real and serious risk any one of those potential conflicts will mature into an actual conflict. This case is no exception.

The Espy's statements at the hearing and the Greens' signed conflict waiver both expressly acknowledge the possibility a conflict will materialize. (Def. Ex. 1; Doc. No. 65, Tr. at 12–15, 20–21.) When asked to "assure the court there *will be* no conflict that could result in a lack of effective assistance of counsel or other prejudice to the defendants," the Espys were unable to do so. (Doc. No. 65, Tr. at 20–21 (emphasis added).) Rather, Attorney Joe Espy responded: "As of today, yes." (*Id*. at 21.) Asked to clarify, he elaborated:

> Certainly. Things develop. It's 6600 pages of discovery. We just got in the case less than ten days ago. We see no conflict based upon our discussions with the client. We see no conflict based upon our review. If we determine there is a conflict, we will deal with it in accordance with the rules of this court and professional conduct and will talk with the U.S. Attorney's office about it. But as of today, they believe it's in their best interest that this firm represent both of them. . . . [W]e see no conflict.

(*Id*. at 20–21.)

Attorney Joe Espy's answer provides no insight into the likelihood no conflict *will* develop. In other words, his answer fails to demonstrate "good cause to believe that no conflict of interest is likely to arise" as is required by Rule 44(c)(2). Fed. R. Crim. P. 44(c)(2).

8

At the hearing, the Espys argued that, when considering whether to permit joint representation, "some of the cases[10] point out . . . stranger defendants are not necessarily the same as married defendants who are married, have children, their lives are interwoven as well as the case. Some of the cases point that out." (Doc. No. 65, Tr. at 11.) The court is aware that, in some cases, based on fact-specific circumstances, husbands' and wives' coextensive interests are so closely aligned, the advantages of joint representation so well demonstrated, the likelihood of conflicts sufficiently minimal, and the risk to the integrity of the proceedings so low as to warrant joint representation without court-imposed protective measures.[11] Yet, here, the Espys identified no case-specific factors particular to

---

[10] The Espys cited no cases at the hearing except *Garcia*, 517 F.2d 272, and they did not elaborate on *Garcia* as it pertains to this case. *Garcia's* focus is the validity of the conflict waiver and the court's participation in the waiver decision. This Order presumes the validity of the waiver.

[11] *See, e.g.*, *United States v. Kaley*, No. 07-80021-CR, 2014 WL 3734679 (S.D. Fla. June 19, 2014); *United States v. Robaina*, No. 13-20346-cr-UNGARO/TORRES, 2013 WL 3243368 (S.D. Fla. June 26, 2013). *Kaley* and *Robaina* are distinguishable on numerous grounds, including, among other things, that the attorneys in those cases had already become extensively familiar with the cases prior to the Rule 44(c) hearing. Here, however, the attorneys who have been in the case longest and are, thus, most familiar with it are the Greens' appointed counsel, not the Espys. The Espys conceded at the Rule 44(c) hearing they "just got in the case ten days ago" and had not even finished thoroughly reviewing the "6600 pages of discovery." (Doc. No. 65, Tr. at 21.) The Espys are not even the first retained counsel to appear for the Greens in this action. Hence, unlike the attorneys in *Kaley* and *Robaina*, the expertise and experience the Espys offer as reason for their continued representation is not specific to the facts and legal issues in this particular action. A number of other reasons also exist why *Kaley* and *Robaina* are distinguishable, but since the Espys did not cite those cases at the Rule 44(c) hearing, the court need not address all the distinguishing characteristics of those cases.

Notably, however, neither *Kaley* not *Robiana* hold that the status of being husband and wife *per se* lowers the risk of a conflict developing. Instead, both *Kaley* and *Robaina* emphasize joint representation in such situations is considered on a fact- and case-specific basis. *See Kaley*, No. 2014 WL 3734679, at *8 ("*The facts of this specific case* are such that no appearance of impropriety will arise by allowing the Kaley Defendants to have their counsel of choice represent them." (emphasis added)); *Robaina*, No. 13-20346-CR, 2013 WL 3243368, at *10 ("Because the

9

this case or the Greens' circumstances to show their marriage renders the development of a conflict unlikely in this action. *Especially* as husband and wife, and in light of the conduct alleged in the indictment, the Greens likely are mutually and intimately familiar with one another's involvement in the alleged conspiracy and the alleged acts underlying the joint and separate charges they each face. That information (and their joint attorneys' confidential knowledge of it) exacerbates the potential for conflicts to arise.

For example, the Greens' heightened knowledge of each others' alleged illegal activities makes any plea negotiation a dangerous minefield for serious potential conflicts. *See United States v. Dempsey*, 724 F. Supp. 573, 578 (N.D. Ill. 1989) (citation omitted) ("[w]hen one attorney represents multiple defendants, . . . plea bargain negotiations are fraught with danger of conflicts of interests"). The Greens almost certainly each know private details about the other's alleged conduct the Government would find highly useful. Further, the Greens "do[] not stand on equal footing with respect to their potential culpability and opportunity to negotiate a resolution of the pending charges against them." *Pacheco-Romero*, 374 F. Supp. 3d at 1329. "[A]s commonly occurs in conspiracy cases, the government may be willing to offer a favorable plea deal to" one of the Greens "in return for their cooperation and testimony against co-defendants," including each other. *Id*. "[A]n attorney's ability to give the best representation to both clients is compromised when

---

trial court's decisions on whether a defendant validly waived the right to conflict-free counsel and the related issue of whether the judge should exercise discretion and reject the waiver are fact-intensive, case-specific inquiries, the Undersigned must focus on the specific facts at issue here. *Another court's decision to reject a waiver in another case may have little, if any, precedential value if the facts are significantly different*." (emphasis added)).

what one defendant does—in their own best interest and within their rights—might hurt the other defendant's interests in the proceedings." *Garner*, 2013 WL 99396, at *2. The Espys "could not fulfill their duty to effectively represent" each of the Greens "by advising one . . . to take a plea deal that would be detrimental to" the other. *Pacheco-Romero*, 374 F. Supp. 3d at 1329. Moreover, decisions on whether to file pretrial motions are often tied to plea negotiations. *See id*.

Should either Green elect to testify at trial,[12] it is highly unlikely joint counsel could cross examine them without facing serious conflicts of interest. *See id.* at 1330 (noting cross-examination would inherently require examination of one jointly represented client whose interests are contrary to the other while in possession of information learned from both clients during the course of representation).[13] If one of the Greens were to testify at trial pursuant to a plea agreement, counsel would be faced with the prospect of impeaching his own client with the agreement he, or another attorney at his firm, personally negotiated.

The serious potential conflicts mentioned in this Order are not the only ones likely to arise in the Greens' case. Nonetheless, they are sufficient to establish the significant probability a conflict will arise and force the Espys to pursue options that may advantage

---

[12] The decision whether to testify would inevitably be tainted by the Greens' knowledge that his or her codefendant's counsel was privy to his or her own confidential communications, defense strategies, and other important information obtained or developed throughout the course of the representation.

[13] The prospect of conflicts in cross-examining jointly represented codefendants presents two hazards: that the cross-examining attorney may use privileged communications to the co-defendant's detriment, or hold back on intense cross-examination to protect the co-defendant or the other client's interests. *Ross*, 33 F.3d at 1523.

one Green more than the other, or "to forego certain strategic options that might otherwise be pursued if [the Greens] were separately represented."[14] *Dempsey*, 724 F. Supp. at 578. Any such conflict will seriously endanger the Greens' Sixth Amendment rights, "impede the trial" by requiring withdrawal of counsel when the likely conflicts do materialize,[15] "and undermine[] the integrity of the judicial system." *Ross*, 33 F.3d at 1524. They also present serious risks to the integrity of the trial proceedings and of future attacks against the adequacy of the waiver, the competence of counsel, and the fairness of the trial. *Henry*, 307 F. App'x at 335. Accordingly, the undersigned finds the Espys' joint representation of the Greens in this case gives rise to serious potential, if not actual, conflict-of-interest issues.

B.   Appropriate Measures to Protect the Greens' Right to Counsel

    1.   Disqualification is the Appropriate Measure

Having found a lack of "good cause to believe that no conflict of interest is likely to arise," the court next "must" determine "appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2). ""Appropriate measures" include requiring "an attorney" or firm[16] "who represents two co-defendants [to] cease . . .

---

[14] The court does not question the Espys' sincerity or dedication to professional ethics. Nevertheless, "[t]his [c]ourt is obliged to make sure . . . dual representation does not stand in the way of counsel's effectiveness, said counsel's best intentions notwithstanding." *Garner*, 2013 WL 99396, at *2.

[15] Because discovery is voluminous, trial delays due to substitution of counsel are particularly likely to unduly burden the parties and the efficient, just, and speedy resolution of the case.

[16] "If one attorney in a firm has an actual conflict of interest, we impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification." *Ross*, 33 F.3d at 1523.

12

representation of either or both of them.""'" *Pacheco-Romero*, 374 F. Supp. 3d at 1328 (quoting *Garner*, 2013 WL 99396, at *2 (quoting in turn *United States v. May*, 493 F. Supp. 2d 942, 944 (S.D. Ohio 2004))). The court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163; *Ross*, 33 F.3d at 1523 ("[E]ven a potential conflict suffices for disqualification."). "In determining whether . . . to disqualify defense counsel, the court must balance two Sixth Amendment rights: (1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interest." *Ross*, 33 F.3d at 1523.

The Espys argue the Greens engaged them "because of [their] reputation and [their] trial record."[17] (Doc. No. 65, Tr. at 10–11.) The Espys further argue the Greens "could not afford two firms of the same quality." (*Id*. at 10.) Although the Espys' reputation speaks for itself, because conflicts probably will arise, the Espys likely will not[18] represent the Greens past the discovery stage, if that long. Thus, the Espys' "trial record" is of little relevance, and the utility of their experience in criminal matters is limited. Moreover, the

---

[17] The record reflects the Espys were not the Greens' first choice for representation.

[18] The Alabama Rules of Professional Conduct mandate withdrawal if a conflict later arises unless the conflict is validly waived. Ala. Rules of Prof'l Conduct r. 1.16(a). Even in the event of a valid waiver, "the obligation placed upon the court by rule 44(c) is a continuing one, and thus" further inquiry into whether to allow joint representation would be necessary if "new developments suggest[] a potential conflict of interest." Fed. R. Crim. P. 44 advisory committee's note to 1979 amendment.

Greens each already have highly experienced appointed counsel who have represented them since their initial appearance.

As the Espys pointed out, discovery is voluminous, encompassing 6,600 pages. (Doc. No. 65, Tr. at 13, 21.) The strong likelihood a conflict will require the Espys to withdraw during or after discovery undermines any potential cost savings. Withdrawal of counsel prior to trial in a case with voluminous discovery is especially likely to create cost, inefficiency, and delay at the Greens' expense.[19] Thus, in this case, the Greens' right to choose counsel based on potential cost savings is outweighed by the significant danger joint representation poses to the "right to a defense conducted by an attorney who is free of conflicts of interest." *Ross*, 33 F.3d at 1523.

Finally, if the Greens wish to pursue a cooperative or unified defense strategy, disqualifying joint counsel would not prevent them from it. Cooperation and solidarity and can be achieved with separate counsel. *Garner*, 2013 WL 99396, at *2 n.2.

Accordingly, the court finds that refusing to accept the Greens' waiver of their right to conflict-free representation is the most appropriate measure to protect the Greens' right to adequate representation. Due to the serious potential for conflict in this case, the court concludes the Espys are due to be disqualified as counsel of choice for the Greens. *See, e.g.*, Ross, 33 F.3d. at 1523. ("If the conflict could cause the defense attorney improperly

---

[19] The court also notes the potential impact of such a scenario on the Greens' and the public's interest in a speedy trial as well as on the administration of judicial resources.

to use privileged communications in cross-examination, then disqualification is appropriate.").

2.  Disqualification is Warranted for Both Defendants

The court next considers whether disqualifying the Espys as to only one of the Greens would adequately protect against the conflicts likely to arise from joint representation. The Greens' jointly-signed conflict waiver states that, in the event a conflict arises, the Espys

> could continue to represent one of us by agreement with the other obtaining new counsel. It is our thinking at this point that should that occur, we would want the Espys to continue representing Samuel, and Sharon would seek new counsel. However, at this time we do not see that conflict, but that would be our current thinking, but we would discuss the same without our attorneys in detail prior to any decision.

(Def. Ex. 1 at 2.)[20]

Representing the co-defendant of a former client, especially in the same criminal case[21] poses a risk of waivable[22] conflicts of interest. Those conflicts substantially coincide

---

[20] Continued representation of one of the Greens was one of three options listed. (Def. Ex. 1 at 2.) The other two were continued representation with a waiver of the conflict, or the Greens' retention of new and separate counsel. (*Id*.)

[21] *See* Ala. Rules of Prof'l Conduct r. 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter . . . [r]epresent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation.").

[22] The record does not expressly indicate Sharon Green was specifically advised about the risks to her, particularly, in the event her former attorneys continue to represent her husband while she obtains other counsel at some later stage of the proceedings. The Greens cannot afford separate counsel whose representation is "of the same quality" as the Espys provide. (Doc. No. 65, Tr. at 11.) Therefore, if the Espys withdraw solely as to Sharon Green, she will be forced to hire less-qualified counsel who must become familiar with the case, including extensive discovery, while contending with relatively short plea and trial deadlines. (Alternatively, qualified appointed

15

with the conflicts likely to occur during joint representation and expose the Greens to many of the same seriously probable risks.[23] "If realized," any of these conflicts "would . . . render[] the court's verdict suspect and [the Greens'] assistance of counsel unethical and ineffective." *Ross*, 33 F.3d at 1524. Consequently, allowing the Espys to represent only one of the Greens is not an "appropriate measure[] to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2). Disqualification of the Espys from representing both Greens is "necessary to 'ensure adequacy of representation [for both Greens], to protect [the] integrity of [the] court, and to preserve [the] trial judge's interest" in freedom "from future attacks [from either Green] over [the] adequacy of [the] waiver and [the] fairness of [the] trial." *Ross*, 33 F.3d at 1524 (citing *Wheat*, 486 U.S. at 162). Thus, the Espys will be disqualified from continuing to represent either of the Greens.

## IV.    CONCLUSION

Pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure, it is ORDERED that Attorneys Joseph Cleodus Espy, III, William Martin Espy, and Benjamin Joseph Espy,

---

counsel would contend with the same challenges.) Meanwhile, Samuel Green will continue with the three Espy attorneys, all armed with information gained from Sharon Green's assistance and confidential communications, a defense strategy crafted with inside knowledge of Sharon Green's strategy, and a head start on evaluating the discovery and developing his case. Assuming Sharon Green's conflict waiver was knowing and voluntary as to the ramifications of that possible scenario, the court rejects it based on the serious likelihood a conflict would arise.

[23] As with joint representation, some likely conflicts involved in representing a former client's codefendant include the potential for the disqualified attorney to use confidential information to the former client's detriment (or to the remaining client's benefit) in developing case and trial strategies, negotiating a plea deal, or cross-examining witnesses at trial. Moreover, knowledge of the former client's confidential information "could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client." *Ross*, 33 F.3d at 1523.

16

and their firm, Melton Espy & Williams, PC, are DISQUALIFIED from representing Samuel Green and Sharon Green in this case.

DONE this 4th day of June, 2025.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE